IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

        Plaintiff,                       OPINION AND ORDER

        v.

                                     14-cv-796-slc

BETH LIND, et al.,

        Defendants.

In this civil action, *pro se* plaintiff Walter Smith, currently incarcerated at Stanley Correctional Institution, claims that various employees of the Wisconsin Department of Corrections ("DOC") violated his statutory and constitutional rights by providing him nutritionally-inadequate Ramadan meals that made him sick over several years in spite of his repeated complaints, they denied him traditional foods for a Muslim feast, they denied him a nutritionally-adequate Halal diet consistent with his religious beliefs, and they denied him regular access to group religious prayer and study meetings.   Smith has been permitted to proceed on First Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(b) and Eighth Amendment claims against some of the defendants.   Defendants have filed a motion to dismiss certain claims (dkt. 16).   I am granting the motion in part and denying it in part.

ALLEGATIONS OF FACT[1]

A.      Parties

Plaintiff Walter Smith previously was incarcerated at Waupun Correctional Institution, and the allegations in the complaint concern his time at Waupun.

---

[1]  The court must accept as true all well-pled factual allegations in the complaint, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), and must view them in the light most favorable to the non-movant, *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

I granted Smith leave to proceed on his claims against the following defendants who are or were Waupun employees:  Beth Lind and Robert Tuckwell, past and current food service managers, respectively; Sandra Hautamaki, the program director;  Michael Thurmer, the former warden;  William Pollard, the current warden; Capt. Muraski, the program security captain; Belinda Schrubbe, the health services unit ("HSU") supervisor; Michael Meiser, a reviewing authority; and Francis Paliekara, the chaplain.

I also permitted Smith to proceed against other DOC defendants that are located in Madison, Wisconsin:  Ismeal Ozanne, then the "OOS" for the DOC; Mr. Lundquist, the DAI (department of adult institutions) representative for the DOC; and Jon Litscher, the current Secretary of the DOC.  Although Smith listed a John/Jane Doe in his complaint, described as the DOC dietician who ordered the Ramadan meal bags for the prison, I did not explicitly permit him to proceed against that defendant.  However, Smith recently filed an Amended Complaint, in which he has substituted defendant Christine Berndt-Miles for that defendant.  (Dkt. 33.) Berndt-Miles has answered the Amended Complaint, and defendants have not moved for her dismissal (dkt. 35), so now I will permit Smith to proceed against her as well.  Finally, I permitted smith to proceed against Zakaria Nurdeen, the chaplain at the Racine Correctional Institution; and Ronald Bayeh, the chaplain at the Milwaukee Secure Detention Facility.

### B.    Denial of Adequate Ramadan Bag Meals

Smith is a practicing Sunni Muslim and has been for more than 20 years.  As part of his faith, Smith fasts every year for the month of Ramadan.  Dating back to 2007, Smith contends that he has been denied nutritionally and religiously adequate meals for the month of daily

fasting during Ramadan.  I granted him leave to proceed on RLUIPA and First Amendment claims against several defendants for their failure to provide adequate meals during Ramadan, as well as an Eighth Amendment failure to protect claim against defendants whom Smith told about the detrimental health effects of the meals but did nothing.  Smith's allegations by year:

### (1) The Year 2007

On June 3, 2007, Smith wrote to defendant Hautamaki, Thurmer and Muraski regarding the approaching month of Ramadan and his concerns about the "unhealthy cold meals" that would be served.  (Compl., dkt. 1, at 3.)  Smith complained that his previous receipt of those bags of food at Green Bay Correctional Institution from 1997 to 2006 resulted in severe and long-lasting digestive issues that on three occasions required antibiotic treatment.  Smith received no response.  Despite his request for warm, healthy meals for Ramadan, on each day from September 13, 2007, to October 12, 2007, Smith was served cold bag meals consisting of food for dinner and breakfast, and Smith had terrible abdominal pains, cramps, diarrhea, etc., after eating those meals, which continued for six to seven months and required medicine to help his digestive system.

Smith and other Muslim inmates filed an inmate complaint, and Smith was told to contact Food Services Administrator Lind, which he did on September 29, 2007.  Lind responded on October 1, 2007, that the bag meals had no problems, and that the Food Services Manual required two bag meals, neither of which had to be hot.  Smith refiled his inmate complaint, and ultimately Thurmer dismissed it.

3

### (2) The Year 2008

In 2008, the events of 2007 repeated themselves.  In June of 2008, Smith wrote a letter to Hautamaki, Muraski, and Thurmer complaining of his history of abdominal and other health issues relating to the Ramadan bag meals.  Smith received no response.

Between September 2, 2008, and October 2, 2008, Smith received cold meal bags, with cold and frozen food and no way to heat the food.  The bags also contained far less in calories than that served to non-fasting inmates, and Smith began experiencing health issues again.  On October 12, 2008, Smith and other fasting Muslims filed a complaint about the bag meals.  The complaint was returned, citing multiple issues.  Smith removed one sentence referring to medical issues and resubmitted the complaint.  It was rejected again, and Thurmer affirmed the rejection.

On October 16, 2008, Smith sought medical treatment for his health issues.  He was given several medications, placed on a bland diet and continued to be treated for the next six to seven months.  At some unknown time, Smith filed another grievance complaining about the Ramadan bag meals; Meisner dismissed his grievance.

### (3) The Years 2009 to 2011

Smith makes similar allegations regarding the Ramadan bags in 2009, 2010, and 2011, and he claims that the defendants permitted this practice of giving unhealthy meal bags to continue until 2011.

### C.    RLUIPA and First Amendment Claims Regarding Eid-ul-Fitr Feast Foods

I granted Smith leave to proceed on RLUIPA and First Amendment claims arising from the denial of traditional Muslim feast foods for the Islamic holiday of Eid-ul-Fitr.  On August

27, 2008, Smith and other Muslim inmates wrote to Hautamaki, Paliekara and Thurmer requesting to have traditional foods such as halal lamb and dates served at the Eid-ul-Fitr (feast after Ramadan fast), volunteering to pay for the feast.  These defendants denied the request.

On October 2, 2008, Smith was served a vegan dinner for Eid-ul-Fitr.  Smith and other Muslims filed a joint grievance regarding "not being served a feast meal that was festive under Islamic tradition." (Compl., dkt. 1, at 34.)  Thurmer agreed with the rejection of that grievance. Smith contends that Waupun served festive items for Christian and Jewish traditions, including for Christmas and Hanukkah.

Smith was again denied Halal and traditional foods for Eid-ul-Fitr in 2009.  In July and again in September 2009, Smith wrote to Thurmer requesting Halal and traditional foods for this Islamic feast.  On September 23, 2009, Tuckwell denied Smith's request stating that per DAI and DOC policy, no special foods will be used in the feast.  Instead, a regular meal would be served as requested by Chaplain Paliekara and Program Director Hautamaki.  Smith claims that this practice with respect to Eid-ul-Fitr food continued until 2011.

### D.      Denial of Nutritionally Adequate Halal Diet

I granted Smith leave to proceed on RLUIPA and First Amendment claims based on his allegations that the vegan plant-based Halal diet was nutritionally inadequate and not a proper Halal diet.  In June or July 2008, Smith began receiving a vegan plant-based diet and he began having complications from the diet, including fatigue, headaches, constipation, intestine pressure and muscle and joint pain.  On October 22, 2008, Smith was seen by a nurse, who informed Smith that she was removing him from the Halal diet because of his medical issues.  After Smith

objected, explaining that he was religiously required to eat only Halal meat and the vegan Halal diet was the only option, the nurse informed Smith that the vegan diet was nutritionally inadequate.  On October 23, 2008, Smith was removed from the Halal diet and placed on a bland diet per order of HSU.

Smith filed a complaint requesting that the Halal diet be modified to make the meal more nutritional and easy to digest.  Meiser dismissed his complaint upon the recommendation that no policy required meat to be served, and the diet met the required nutritional standards.  Smith filed another complaint in August 2008, similarly complaining about the vegan Halal diet, and requesting that the Halal diet be modified to exclude the vegan portion and to no longer limit him to a meat patty four times a week because that violated Islamic requirements.  Defendants Paliekara, Beyah and Nurdeen disagreed with Smith's statement that limiting Muslims to four Halal beef/soy patties a week violated Islamic requirements.  On November 4, 2008, Hautamaki, Lundquist and Thurmer denied Smith's request to modify the diet.  According to Smith, this Halal diet continued until 2011.

### E.     RLUIPA and First Amendment Claim Based on Denial of Religious Services

Finally, I granted Smith leave to proceed on a RLUIPA and First Amendment claim that he was denied religious services due to a lack of volunteers.  On September 28, 2009, Smith filed a grievance, in which he complained that Jumu'ah had been cancelled several times due to a lack of volunteers, that Ta'alim (or study group) had not been held in years, and that there were no other opportunities for Muslims to discuss, teach or learn in a group setting, in violation of the Qur'an.  His complaint challenges DAI policy 309.61, which prohibits services from being held

6

unless there is an outside volunteer available to hold them.  Since then, until 2012 when Smith left WCI, Jumu'ah services continued to be cancelled, sometimes for months at a time, and there was no Ta'alim or other group learning opportunities.

## OPINION

Pursuant to Fed. R. Civ. P. 12(b)(2) and (6), defendants have moved for the court to dismiss these claims (listed by this court's section numbers in this order):

(I) Smith's 2007-2008 First and Eighth Amendment claims, on statute of limitations grounds;

(II) Smith's claims against Schrubbe, for failure to state a claim;

(III) Smith's First and Eighth Amendment claims against Litscher, due to lack of personal involvement;

(IV) Smith's RLUIPA claims, due to mootness; and

(V) Smith's First Amendment claims related to the Eid-ul-Fitr meal, the prohibition on inmate-led services and Smith's receipt of a vegan Halal diet, due to qualified immunity.

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in [his] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).  The plaintiff need not provide detailed factual allegations, but must provide "just enough facts to raise [the claim] above the level of mere speculation."  *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D.

7

Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). A plaintiff must provide enough facts to state a claim that is plausible on its face and allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, the plaintiff can plead himself out of court by alleging facts in its complaint which demonstrate that he is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Under this lenient standard, some, but not all, of plaintiffs claims survive defendants' motion to dismiss.

## I.    2007 and 2008 Constitutional Claims

In Wisconsin, the statute of limitations for § 1983 actions is six years from the time an injury accrues. *See* Wis. Stat. § 893.53; *Gray v. Lacke*, 885 F.2d 399, 408-09 (7th Cir. 1989) (holding that the six-year "personal rights" statute of limitations applies to § 1983 actions, rather than the three-year period for personal injury). A claim begins accruing from the date the plaintiff knew or should have known that he sustained an injury. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801-02 (7th Cir. 2008). Under the continuing violation theory, however, a plaintiff may obtain relief for a time-barred act when that act is linked with the acts that fall within the statutory limitations period because the claim accrues on the date of the last injury. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (citation omitted). The theory does not, however, apply to a "series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Id.* (quoting *Rodrigue v. Olin Emp. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005)).

8

Defendants initially sought dismissal of plaintiff's 2007 *and* 2008 constitutional claims, but concede in their reply that Smith's 2008 constitutional claims regarding the Ramadan meal bags, the Eid-ul-Fitr feast and vegan Halal meals are not time-barred.   Defendants still seek dismissal of his constitutional claims related to the Eid-ul-Fitr feast and Halal meals, but on qualified immunity grounds, which will be addressed in a different section, below.

Defendants contend that Smith's 2007 constitutional claims should be dismissed because they accrued before November 19, 2008 (six years prior to the November 19, 2014, date the complaint was filed), and that Beth Lind should be completely dismissed from this action because her involvement in Smith's claims took place entirely before that date.

Smith disagrees, contending that his 2007 First and Eighth Amendment claim related to the Ramadan meal bags were timely due to the continuing violation doctrine.   He claims that the Ramadan meals, a product of an on-going meal policy at Waupun, caused his medical condition to continue every year until he was transferred to another facility in 2011.   In his view, his constitutional claims therefore did not accrue until 2011.   He cites two decisions from the Seventh Circuit in support, but neither are directly on point and they actually demonstrate that each year that he consumed the Ramadan bags and suffered digestive issues constituted separate, albeit related, claims.

First, Smith cites *Heard v. Sheahan*, 253 F.3d 316, 317-20 (7th Cir. 2011), in which the court applied the continuous violation doctrine to a plaintiff's medical care claim that arose from the defendants' failure to respond to his repeated and consistent complaints about pain in his groin area, which eventually led to a ruptured hernia.   In applying the continuing violation doctrine, the court held that "every day" that the defendants did not treat his condition "marked

9

a fresh infliction of punishment that caused the statute of limitations to run anew," reasoning that a continuing violation occurs "when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 318-19.

Smith also cites to *Turley v. Rednour*, 729 F.3d 645, 651-52 (7th Cir. 2013). In that case, a prisoner was challenging the constitutionality of a series of lockdowns that were imposed during a two-year period of time between January 7, 2008, and October 4, 2010. During that time period, 25 lockdowns were imposed, resulting in a total of 534 lockdown days, which was more than 50% of that time period. In holding that there was a continuing violation, the court concluded that the repeated and regular lockdowns increased the prisoner's medical and psychological injuries "[w]ith each continuing day and period of lockdown." *Id.*

Both of these decisions involve facts in which a plaintiff was suffering ongoing health problems that went untreated. In this case, while Smith experienced similar symptoms during and following Ramadan from 2007 through 2011, each bout of illness (including the 2007 bout) lasted for a distinct period of time, namely during and for 6-7 months after Ramadan. As Smith acknowledges, he received treatment from HSU for his symptoms, which resolved themselves in about six or seven months, and his digestive system returned to normal before the next year's Ramadan. Therefore, his situation is distinguishable from the situations presented in *Heard* and *Turley*, in which the Seventh Circuit emphasized that the plaintiffs' injuries continually increased with the passage of time due to defendants' repeated failure to respond or act. Because Smith's symptoms disappeared each year and did not return for a period of several months, he suffered a sufficiently distinct injury each year. Therefore defendants are correct that each 30-day period of time that Smith received the Ramadan meal bags constituted a separately actionable event.

10

Accordingly, I am dismissing Smith's 2007 constitutional claims related to the Ramadan meal bags. As such, I am also dismissing Lind from this lawsuit because she did not serve as the food service manager past 2007.

## II.   First and Eighth Amendment Claims Against Schrubbe

Defendants argue that plaintiff's First and Eighth Amendment claims against Schrubbe warrant dismissal because her involvement in his treatment and diet fulfilled any constitutional obligation she owed him. Defendants are correct regarding Smith's First Amendment claim.

As to the First Amendment, Smith does not alleges that Schrubbe was involved in providing meal bags to him, or in determining what would be in those meal bags. Thus, according to defendants, she had no duty to provide him the religious foods he requested. In support, defendants cite *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009), in which the court held that knowledge, without the duty or ability to rectify the problem, does not necessarily result in liability under § 1983. In *Burks*, the court held that an inmate complaint examiner could not be held liable on a medical care claim because it was not her duty to address medical claims. *Id.* at 595. This holding in *Burks* applies here: Smith does not allege that Schrubbe's duties involved addressing prisoners' religious needs, and her position as the HSU supervisor suggests that her role is limited to prisoner medical care. Therefore, because Smith has alleged only that Schrubbe knew that he was experiencing health issues with the meal bags and did nothing to change them, he cannot sustain a *First* Amendment claim against her.

11

Defendants also seek dismissal of Smith's Eighth Amendment against Schrubbe because she was the HSU supervisor and the HSU consistently provided Smith with medical care to treat his symptoms, citing to instances in his complaint where he admitted that he received treatment from HSU.  (Compl., dkt. 1, at 6, 7, 14.)  While Smith consistently received medical treatment from HSU, that does not necessarily absolve Schrubbe from Eighth Amendment liability.

Smith alleges that Schrubbe knew that Smith was suffering from severe digestive problems as a result of the Ramadan meal bags because he wrote to her about his health issues in both 2008 and 2009.  During this period, Schrubbe was in a position to address Smith's digestive complaints.  For instance, Schrubbe could have tinkered with the medications Smith received from HSU to see if she could shorten their duration, or she could have worked with the food providers in an attempt to craft a different Ramadan diet for Smith that would not make him so sick.  At this stage of the lawsuit, Schrubbe's failure to act, despite her ability to attempt to address Smith's repeated complaints about the effects of the meal bags, could amount to deliberate indifference.  *Gonzalez v. Feinerman,* 663 F.3d 311, 314 (7th Cir. 2011)(failure to alter response to prisoner's medical condition can constitute deliberate indifference because "[plaintiff's] physicians were obligated not to persist in ineffective treatment"); *cf. Garner v. Sumnicht*, 554 Fed. App'x 500 (7th Cir. 2014)("The Constitution does not . . . ensure topnotch care, but neither does it allow prisons to bypass available treatments that would solve a prisoner's serious medical problem and stick with drugs or regimens known not to work.").

Accordingly, I am dismissing Smith's First Amendment claims against Schrubbe but not his Eighth Amendment claims against her.

III.   **First and Eighth Amendment Claims Against Litscher**

Defendants next argue that because Litscher was not personally involved in any of Smith's First and Eighth Amendment claims, I should dismiss the claims brought against him in his individual capacity.  Smith agrees, so I will dismiss the First and Eighth Amendment claims against Litscher individually.

IV.   **RLUIPA Claims**

Next defendants contend that Smith has no RLUIPA claim because he was only subject to the policies he attacks until 2011 or 2012.  While defendants' point may prove correct, I will not dismiss these claims absent factual development.

Defendants are correct that the only remedy afforded by RLUIPA is injunctive and declaratory relief.  *Easterling v. Pollard*, 528 Fed. App'x 653, 656 (7th Cir. 2013) (unpublished) ("RLUIPA does not permit claims for money damages against states or prison officials in their official capacity or against prison officials in their individual capacities.") (citing *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009)).  And, as I concluded in my leave to proceed order, because none of Smith's RLUIPA claims appear to involve ongoing issues, his RLUIPA claims against Waupun *employees* for alleged violations specific to Waupun appear to be moot. *See, e.g.*, *Vinning-El*, 657 F.3d at 592 ("Vinning-El is no longer at Pinckneyville and is receiving a vegan diet at his current prison, so damages would be the only potential relief.").  Nonetheless, for purposes of screening, I inferred that Waupun's policies concerning Ramadan meals, food for religious feasts, Halal diet, and

availability of group religious services reflect a DOC policy to which Smith is still subject. *See West v. Grams*, No. 14-3623, 607 F. App'x 561, 566 (7th Cir. Apr. 22, 2015) (unpublished) ("West's lawsuit challenges under RLUIPA a system-wide Department of Corrections policy that applied at Columbia, still applies at Green Bay, and-unless modified-will apply wherever West is next sent until his release.").

Smith states, without detail, that I was correct in drawing this inference, but defendants cite multiple instances from Smith's pleadings that suggest his transfer from Waupun mooted these claims. First, defendants point to a paragraph in Smith's response to the motion to dismiss in which he states that he was subject to the cold Ramadan meals "until he was transferred from Waupun." (Dkt. 25, at 3-4.) Second, as to the lack of religious services and study groups, defendants cite to a paragraph in Smith's complaint where the services were not available due to a lack of volunteers *at Waupun*. Third, as to the feast foods and vegan Halal diet, defendants agree that these policies are system-wide, but they argue that because Smith failed to raise them in his complaint, his right to relief under RLUIPA is purely speculative.

While defendants may well be correct that the RLUIPA claims are moot, at this stage, I must draw every inference in Smith's favor. Smith avers that he is still subject to the limitations affecting Ramadan, prayer service, feast meal and vegan diets. As a result, it is not clear whether Smith's RLUIPA claims actually are moot. Therefore I will not dismiss Smith's RLUIPA claims at this time.

14

**V.     Qualified Immunity as to Many of the First Amendment Claims**

Finally, defendants seek dismissal of Smith's First Amendment claims on qualified immunity grounds.  Qualified immunity is an affirmative defense that requires the defendant to show the objective reasonableness of his or her conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).  The purpose of the doctrine is to shield government officials from liability (and thereby make them comfortable acting in the public interest) when their conduct does not violate a "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818.  The test is objective: it asks whether the government official "knew or reasonably should have known that the action . . . would violate the constitutional rights of the [plaintiff]."  *Id.* at 815.  To invoke a clearly established right, a plaintiff needs to point to something "more particularized" than an abstract right guaranteed by federal law.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Yet a plaintiff need not point to a case involving the exact scenario, so long as the unlawfulness of the action is apparent in light of pre-existing law.  *Id.*; *see also*, *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996) ("Under the doctrine of qualified immunity, liability is not predicted upon the existence of a prior case that is directly on point.").

Because an immunity defense usually is fact-intensive, dismissal on this ground at the pleading stage is rare.  Indeed, "a plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."  *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).  This makes Rule 12(b)(6) "a mismatch for immunity and almost always a bad ground for dismissal."  *Id.* at 652 (quoting *Jacobs*, 215 F.3d at 775)(Easterbrook, J., concurring)).  Even

so, if the unlawfulness of the government official's conduct as pled is not clearly established, then the government official could be entitled to qualified immunity, even if the defense is asserted at the pleading stage. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Defendants have not disputed the facts in Smith's complaint. Rather, they contend that, even taking Smith's allegations as true, the defendants did not violate a clearly established right with respect to the failure to provide the Eid-ul-Fitr feast foods, the prohibition on inmate-led services, and Smith's vegan Halal diet. I consider each contention in turn:

## A.    Eid-ul-Fitr Meal

Defendants argue that there is no clearly established First Amendment right that requires prisons to provide inmates with special foods for annual celebratory meals. Defendants cite to *Schlemm v. Wall,* 784 F.3d 362, 363 (7th Cir. 2015), in which the Seventh Circuit did not reverse this court's conclusion granting summary judgment on the basis that the plaintiff had no First Amendment claim to a celebratory feast meal. Yet the *Schlemm* decision doesn't make the point defendants wish; this court granted summary judgment to defendants because Schlemm had not established a First Amendment violation, not on qualified immunity grounds. *Schlemm v. Frank*, No. 11-cv-272-wmc, 2014 WL 2591879, at *15 (W.D. Wis. June 10, 2014).

Smith, conversely, cites to multiple cases in his attempt to show that a clearly established right to the Eid-ul-Fitr foods exists. Although none of Smith's cases directly supports his assertion, the parties' immunity dispute nonetheless will require further factual development. For instance, in *Al-Alamin v. Gramley*, 926 F.2d 680, 689 (7th Cir. 1991), the first case that

16

Smith cites, the Seventh Circuit reversed a district court order requiring the prison to provide specific Halal food during Eid-ul-Fitr.  In reversing, the court stated that it could not conclude that the defendants' actions "were, at any particular point in time, constitutionally deficient." *Id.*  This conclusion does not help Smith.

Next, Smith cites *Ford v. McGinnis*, 230 F. Supp. 2d 338, 340-41 (S.D.N.Y. 2002), *vacated and remanded by* 352 F.3d 582 (2d Cir. 2003), in which the Second Circuit reversed a finding that prison officials were entitled to qualified immunity with respect to an inmate's right to the Eid-ul-Fitr feast foods.  In *Ford*, the court held that the inmate had a clearly established right to the feast foods, and, further, that it was not reasonable for prison officials to believe that it was okay to deny him these foods based on their understanding that such feast foods were not mandated under Muslim law.  *Id.* at 598.  But the court did not reach the next question in the analysis, namely whether the defendants reasonably believed that their conduct was supported by a legitimate penological interest.  The appellate court remanded the case so that the district court could complete the analysis..  Thus, while the *Ford* case is helpful to Smith, it does not establish that the defendants' claim of immunity is incorrect.

Finally, Smith cites *Perez v. Frank*, No. 06-C-248-C, 2007 WL 1101285 (W.D. Wis. Apr. 11, 2007).  In this case, while the plaintiff succeeded on his First Amendment claim, this decision did not create a clearly established right to certain religious foods.  Plaintiff won because the defendants failed to file any proposed findings of fact in support of their position.  *Id.* at *13.  In finding for the plaintiff, the court emphasized that the holding was limited to the unique facts of the case, and that it appeared likely that the defendants might have been able to establish a compelling penological justification for denying the feast food.  *Id.* at *14 ("I emphasize once

17

against that the holding of this case is confined to its unique facts and posture. Should a similar case arise in the future, defendants would be free to submit factual evidence in support of their now-unsubstantiated claims that compelling reasons underlie the policies plaintiff has challenged successfully in this case.") In other words, the case has no precedential value because the outcome was based on the defendants' procedural mistakes. Given the court's limitation of its decision in *Perez*, none of the cases cited by Smith establish a clearly established right to the Eid-ul-Fitr feast foods.

That being so, I am not going to dismiss this First Amendment claim on qualified immunity grounds without first adducing more facts. I am chary of defendants' tactically narrow definition of the right at issue in this lawsuit: the right to Eid-ul-Fitr feast foods. Even if defendants are correct in asserting that this specific right to Eid-ul-Fitr feast foods has not been established clearly–and it appears that this assertion *is* correct–there are indications that the DOC has recognized and honored requests for celebratory meals by other religious faiths. Beyond stating that defendants have denied him Eid-ul-Fitr foods, Smith alleges that defendants permit inmates of other faiths to observe the feast meals of their religions:

> Defendants allowed Christmas, New Years, Easter, and Thanksgiving to be festive under Christian tradition . . . allowed festive items to be donated for Jewish inmates during Hanukkah with kosher diets, and provided a vegan diet for other religious groups for their festive traditions.

(Am. Compl., dkt. 33, at 9.)

Given how defendants treat other religious feasts (according to Smith), it would not be an unreasonable jump in logic for defendants to conclude that Smith was likewise entitled to the celebratory foods that he states are required by his Muslim faith. *Carroll v. Carmen*, 135 S. Ct.

348, 350 (2014) ("A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'") (citation omitted).   Accordingly, I will not dismiss Smith's Eid-ul-Fitr claim on qualified immunity grounds at this stage.

### B.    Non-Vegan Halal Diet

Defendants similarly argue that Smith failed to establish that in 2008 he had a clearly established right to the non-vegan Halal diet that he requested but was denied.   To start, defendants argue that Smith had to establish that the right was clearly established in 2008, the time he started receiving the diet.   *See Abbot v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013).   Perhaps, but Smith claims that he remained on the defendants' inappropriate and inadequate diet until 2011.   This suggests that this claim would remain viable if the right to a non-vegan Halal diet became clearly established after 2008 but before 2012.   But regardless of the timing issue, Smith has not submitted any authority suggesting that the right to a non-vegan Halal diet has ever been clearly established.   But as above, I will not dismiss this claim on qualified immunity grounds without further factual development.

According to defendants, in 2008, the controlling precedent on this issue was *Perez v. Frank*, No. 04-C-1062, 2008 WL 859716 (E.D. Wis. Mar. 28, 2008).   In *Perez*, the court found that a denial of the Halal diet that included meat did not violate the First Amendment, and that, at that time the Supreme Court had "yet to rule on whether prisoners are required under the First Amendment . . . to provide inmates with meals that meet specific requirements of their

religion." *Id.* at *6.  While Smith attempts to distinguish his beliefs from those of the plaintiff in that case, that difference does not change the fact that, in 2008, there was no clearly established right to the Halal diet that Smith is seeking.

Smith counters with *Perez v. Frank*, No. 04-C-1181, 2009 WL 606222 (E.D. Wis. Mar. 9, 2009), but that case does not clearly establish a right to the a non-vegan Halal diet.  Rather, the court concluded that a jury would have to decide whether plaintiff's religious beliefs were sincere and whether the defendants' justification for their limitation on Halal meat to four days a week passed muster under the RLUIPA.

Finally, plaintiff cites a decision from the Ninth Circuit, *Shakur v. Schriro*, 514 F.3d 878, 883-88 (9th Cir. 2008).  In *Shakur*–which was decided after Smith starting receiving the diet he is challenging–the court held that the Free Exercise Clause was implicated by the prison's refusal to provide plaintiff with Kosher meat that plaintiff claimed was required by his religious beliefs.  The court, however, did not conclude that the defendants' policy actually violated the First Amendment.  Thus, setting aside the fact that this decision comes from another circuit, *Shakur* did not clearly establish a First Amendment dietary right that should have informed the defendants' 2008 decision whether it was appropriate to place Smith on the vegan Halal diet.

Smith cites no authority suggesting that he had–or has–a clearly established right to the non-vegan Halal diet.  But again, I am not yet convinced that defendants are entitled to qualified immunity on this issue.  First, defendants have posited a questionably narrow definition of what this clearly established right would be, namely, Smith's right to a "non-vegan Halal diet."  It is unsurprising that Smith has been unable to cite a decision from this circuit establishing his right to this particular diet.  Smith's actual complaint is that his Halal diet is "not nutritional or

wholesome" (Am. Compl., dkt. 33, at 9), which this court interprets as a request for a nutritionally adequate religious diet.  The Seventh Circuit has reaffirmed that a prisoner's religious diet is substantially burdened when he has to choose between his religious diet and adequate nutrition.  *Thompson v. Holm*, 809. F.3d 376, 381 (7th Cir. 2016) (commenting that other circuits have observed that prisoners have a clearly established right to a "diet consistent with his . . . religious scruples, including proper food during Ramadan" and also citing *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009), and *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990)).  In the absence of more facts on the question whether the vegan Halal diet provides Smith with adequate nutrition, it would be inappropriate for the court to conclude that he has no clearly established right to the type of Halal diet he seeks.  Therefore, I will not dismiss this claim on qualified immunity grounds.

### C.    Religious Services

Finally, defendants contend that Smith has not shown that there is a clearly established right to permit inmates to lead prayer services without a volunteer present.  They point out that, due to legitimate penological justifications, "[i]t has never been clearly established that inmates have a right to inmate-led group membership under the First Amendment." *West v. Grams*, 607 F. App'x 561, 565 (7th Cir. 2015).

This is accurate as far as it goes, but it may not completely cover Smith's complaint. Smith alleges, and I must accept as true, that Jumu'ah services have been canceled several times and that there have been no study groups for "years," due to a lack of volunteers at Waupun.

21

It may be that the defendants do have legitimate penological justifications for requiring a volunteer to lead such services, but the validity of this policy may not fully encapsulate Smith's claim.  Rather, the facts before the court at this stage are that the defendants have repeatedly denied religious services to Muslim inmates due to lack of volunteers, while inmates practicing other faiths have been able to engage in group religious study.  Thus, Smith's allegations not only appear to challenge the volunteer policy generally, they also raise the question whether the defendants have improperly put more effort into securing volunteers for non-Muslim faiths and left the Muslims to languish.  Because further factual development will clarify the contours of Smith's religious services claim, I will not dismiss it on qualified immunity grounds at this time.

ORDER

IT IS ORDERED that Defendants' Motion to Dismiss Certain Claims (dkt. 16) is GRANTED in part and DENIED in part as follows:

(1) These claims are dismissed:

    (A)   First and Eighth Amendment claims related to Ramadan bag meals from 2007, due to the statute of limitations;

    (B)   Defendant Lind, due to the statute of limitations; and

    (C)   Individual constitutional claims against Defendant Litscher due to lack of personal involvement.

(2) These claims remain:

    (A) RLUIPA claims related to Ramadan meals, the Eid-ul-Fitr feasts, the Halal diet, and availability of group religious services;

(B )  First and Eighth Amendment claims related to Ramadan bag meals
from 2008, 2009, 2010, and 2011.


(C)  First Amendment claims related to the Eid-ul-Fitr feast;


(D)  First Amendment claims related to the vegan Halal diet; and


(E)  First Amendment claims related to the prohibition on inmate-led
services.


Entered this 24th day of October, 2016

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge