IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

    Plaintiff,

v.

BETH LIND, et al.,

    Defendants.

OPINION AND ORDER

14-cv-796-slc

Plaintiff Walter Smith is pursuing claims related to the adequacy of Ramadan meal bags at Waupun Correctional Institution (Waupun) in 2008, 2009, 2010, and 2011; the availability of proper foods for the 2009 Eid-ul-Fitr feast; and the adequacy of the halal diet. With respect to his claims related to Ramadan meal bags and the adequacy of the halal diet in particular, Smith claims that the food he was receiving between 2008 and 2011 sickened him. Defendants have filed a motion for sanctions, asking the court to dismiss this lawsuit with prejudice (and assess Smith a strike) on the ground that Smith fabricated years of food logs that he recently produced during discovery. (Dkt. 143.) I am denying defendants' motion without prejudice for the reasons stated below.

OPINION

"A district court has inherent power to sanction a party who 'had willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). "Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Id.* Defendants have the burden to prove that the basis for seeking sanctions to a preponderance of the evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016).

Here, defendants have raised legitimate concerns about the authenticity of the food logs prepared and submitted by plaintiff. In January 2008, Smith's doctor recommended that Smith start keeping a food log to help him determine the foods that triggered his Irritable Bowel Syndrome (IBS). During his May 9, 2019, deposition, Smith testified that he did keep such a food log, but that his cousin, Rashida Williams, possessed it and was in the process of sending it to him. (Smith Dep. (dkt. 91) 109-10.) On May 20, 2019, defendants served a discovery request on Smith requesting all of his food logs. Smith took so long to produce the logs that the court had to extend defendants' summary judgment reply deadline multiple times.

Smith finally produced the logs on August 15, 2019. That same day, defendants served Smith's counsel with follow up interrogatories, asking in Interrogatory Request No. 7 for Smith to explain his delay. (*See* Anstaett Decl. Ex. 1 (dkt. 153-1).) Smith's response deadline was September 16, 2019. Defendants filed their motion for sanctions on August 21, 2019, without waiting for Smith to respond to that interrogatory and without notifying Smith's counsel.

Smith filed his opposition brief on September 5, 2019, and his counsel submitted Smith's unverified response to the August 15 discovery requests. (*See* Anstaett Decl. Ex. 1 (dkt. 153-1) 6-7.) Smith's counsel explains that while Smith agreed to the drafted responses over the phone, he had not verified them as of September 5. In that response, Smith provides a number of reasons for his delayed production of the food log. First, Smith explains that on June 11, 2019, Smith was sent to restrictive housing. Smith was in segregation for one day, but during that day, two things happened. First, the mail room received the 2008-2011 food log from Williams, but sent it back to her because Smith was in segregation. Second, that day, all of Smith's materials in his cell, including the portions of his food log in his possession, were confiscated and mixed

2

up in such a way that he had to go through his materials page-by-page to put them back together.

These yet-to-be-verified representations raise questions about Smith's truthfulness and are rife with potential factual disputes. For instance, Smith's claim that he was placed in segregation on the exact date that the mail room received his food logs back from Williams strains credulity. Additionally, Smith's response doesn't explain *when* he eventually received the portion of the food log Williams was sending, just that it was a "couple of weeks" after it was returned to her. Perhaps Smith could explain all of this if asked to do so. Defendants, however, filed their motion without asking for more followup.

Defendants's motion is based on more than just Smith's delay. They also contend that the food log (Ex. 127 (dkt. 146) 13-168) has been fabricated because (1) the log entries appear "too uniform to have been created in real time over the past eleven years," and (2) Smith's 2010 log places Ramadan on the wrong dates. This, contend defendants, could not have happened if Smith had prepared the log at the time.

As for the uniformity of the food log, there are factors supporting defendants' suspicions, but none is telling enough to cause this court to conclude that Smith *must* have fabricated his entries. For instance, it is remarkable that from January 2008 through June, 2019, Smith seems to have used the same blue pen to make his entries: the line width and hue of the ink are uncannily similar over this 11½ year span. On the other hand, it may be that WCI has provided the same brand and model of pen to inmates during this entire period, so that one should expect decades of uniformity. To the same effect, one could point to the increasing terseness of Smith's entries, which might suggest that Smith was running out of steam toward the end of his

3

fabrication project; on the other hand, there also are gaps and terse entries in the middle years, undermining the strength of this inference.

A redder flag (to the court, if not the defendants) is that many of Smith's entries have nothing to do how his meals are affecting him. Instead, Smith reports interactions he had with Waupun staff, the status of his inmate complaints, that Waupun staff weren't allowing him to practice his religious beliefs, and that something is wrong with the water. Here are a few examples:

> August 3, 2009: "Sent letter to Scrubbe on Ramadan bag meals for this year." (Ex. 127 (dkt. 146) 51.)
>
> August 4, 2009: "Scrubbe responded telling me not to fast, I don't have to, she's sooo wrong. She really doesn't give a dam. I'm not sick when the fast starts and I'm not near death." (*Id.*)
>
> September 22, 2009: "The Eid[-ul Fitr feast] was so bogus, wrong day . . . sat in chair whole time, no one ate . . . none Halal food. It was just wrong." (*Id.* at 53.)
>
> September 26, 2009: "Refiled I.C. on Ramadan bugs. Ask plummers why they replacing pipes. They stated they were contaminating the water, [illegible] style pipe no longer used. Makes people sick!!!" (*Id.*)
>
> October 23, 2009: "[Warden] Meisner rejected Ramadan bag I.C. It is just a formality to them. My suffering somehow annoys them. Water contaminated I.C. returned contact Mr. Clover." (*Id.* at 55.)

In this and another federal lawsuit in this court, Smith is pursuing claims related to these other issues. These log entries appear designed to help Smith prove his claims, not to identify foods that trigger his IBS. If defendants renew their motion, then Smith will have to explain why he included such entries in a food log.

The reddest flag is that Smith screwed up the dates of Ramadan in 2010. Defendants point out that Ramadan started on August 11 and ended on September 9, 2010, but Smith's log records reflect that he received meal bags between August 2 and September 3. (Ex. 127 (dkt.

4

146) 75-77.) Defendants ask the court to construe these erroneous entries as evidence that Smith recently fabricated the log.

Not so fast, responds Smith; this was just a mistake, which is borne out by a log note to himself on October of 2010 in which he notes that he had written the dates down wrong at that time. (Smith Decl. (dkt. 152) ¶ 3; Ex. A (dkt. 152-1).) This explanation doesn't make sense: Smith's entries are extraordinarily detailed almost every day and they predate the start of Ramadan by over a week. How could Smith write such meticulous accounts of bureaucratic mistreatment that hadn't even occurred yet?

Further, Smith doesn't explain why he never actually corrected the August entries back in October of 2010 when he claims he noticed his mistake. Defendants believe that Smith's October 2010 note also was fabricated. In support, defendants cite Smith's later entries in August as evidence that his story doesn't hold together; they point out that if Smith really did believe that it was August 11 when it was August 2, his subsequent entries related to other events would also be 9 days off. However, several of Smith's subsequent entries in August of 2010 – related to when he filed inmate complaints and submitted health care requests – corroborate with the *correct* date, not a date that was nine days earlier. Specifically:

> August 22, 2010: Smith wrote "sent an HSR, Ramadan bags causing severe cramp! Burning, bleeding, constipation, vomiting . . . ." (Ex. 127 (dkt. 146) 76). Smith's medical records show that he did send the HSR on August 22, 2010. (Ex. 100 (dkt. 105) 354.)

> August 22: Smith wrote that he filed inmate complaints about the Ramadan meal bags not having sufficient calories and about "intestine issues." (Ex. 127 (dkt. 146) 76.) Smith's inmate complaint records confirm that he submitted to inmate complaints, WCI-2010-17935 and WCI-2010-17684, that day. (Dkt. 96 at 125.)

5

> August 25: Smith wrote: "I.C. on calories returned [because of] multiple issues," and on August 26, he wrote that he resubmitted that inmate complaint. (Ex. 127 (dkt. 146) 76.) Smith's inmate complaint record shows that on August 26, Smith wrote to the inmate complaint examiner that he had placed a revised complaint in the complaint box on August 26, 2010. (Dkt. 96, at 126.)
>
> August 31: Smith wrote: "Saw nurse about intestine cramps, all over and swollen and is making abnormal sounds . . . ." (Ex. 127 (dkt. 146) 76.) Smith's medical records confirm that he saw a nurse on that date regarding gastrointestinal symptoms. (Ex. 100 (dkt. 105) 153.)

All this being so, I am not going to dismiss plaintiff's lawsuit at this juncture for two reasons. First, defendant's evidence is not strong enough to merit the sanction of dismissal. By comparison, in *Amonoo v. Sparling*, No. 15-cv-603-slc, I granted defendants' motion to dismiss the pro se prisoner's lawsuit as a sanction for having submitted fabricated documents to the court. *See* dkts. 54 & 65. In *Amonoo*, I gave the plaintiff several opportunities to explain the discrepancies between several critical documents, but he did not do so. Even then, I stated that

> Perhaps if the property inventory were the only document at issue, I would be disinclined to sanction plaintiff based solely on its submission given the outstanding questions regarding the differences between the two documents. However, the second document at issue – the alleged 2013 property receipt – is such an obvious fabrication that a sanction is appropriate.
>
> * * *
>
> In sum, I conclude that the clear and convincing evidence establishes that plaintiff submitted at least one fabricated document, and probably two, with his summary judgment opposition materials. . . . I conclude that dismissal of this case is the most appropriate sanction under the circumstances.
>
> July 14, 2017 Order, dkt. 65, at 2, 5.

In the instant case, defendants' evidence of fabrication is not as strong. I agree with defendants that Smith's logs are suspicious, but not suspicious enough for the court to kill this lawsuit without more process, if we get there from here. More on this below.

This segues to the second reason not to grant defendants' motion: in the court's view, the defendants jumped the gun. Defendants claim that they did not *need* to try to resolve this dispute with Smith's counsel before filing their motion. That may be technically true in the sense that the federal rules do not impose a safe harbor requirement in this situation. But where, as here, the prisoner plaintiff has obtained volunteer counsel, professional courtesy (and this court's August 31, 2019 preliminary pretrial conference order, dkt. 78 at 1), required defendants to provide opposing counsel with consideration and accommodation before filing a dismissal motion based on their client's alleged misconduct.

This is a good spot to observe that none of the parties are using Smith's food log in their summary judgment submissions. This both lessens the egregiousness of any fraud, at least for the time-being, and it gives us time to sort this out, if more sorting is needed. If it turns out that neither side makes use of Smith's food logs in this case, then this would further reduce the egregiousness of any fraud by Smith. While this court will not tolerate intentional misrepresentations by litigants, and while the long wait for production of Smith's food logs disrupted the schedule, circuit law requires this court to consider other sanctions before resorting to dismissal. *Rivera v. Drake,* 767 F.3d 685, 686-87 (7th Cir. 2014).

In any event, I am denying defendants' motion without prejudice. If, after reviewing plaintiff's verified discovery responses and after meeting and conferring with plaintiff's attorney, defendants wish to renew their motion, they may do so, but they will need to present something stronger than what they've got now to obtain a sanction beyond striking the logs from evidence.

It is difficult for the court to envision resolving a renewed motion to dismiss without holding an evidentiary hearing and making credibility determinations. At this point, the juice doesn't seem worth the squeeze, but maybe something will develop that changes the calculus.

Both sides will bear their own costs on this motion. Defendants may have lost their motion, but as noted above, they may actually be correct that Smith has committed fraud. They just don't have enough evidence to persuade me to dismiss Smith's lawsuit. Defendants' attorney should have met and conferred with opposing counsel first, but I don't think that would have persuaded counsel not to file this motion. This simply would have reversed the sequence of both sides' workload.

ORDER

IT IS ORDERED that defendants' motion for sanctions (dkt. 143) is DENIED without prejudice.

Entered this 5th day of November, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge