IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

    Plaintiff,

v.

BETH LIND, *et al.*,

    Defendants.

OPINION AND ORDER

14-cv-796-slc

18-cv-189-slc

Plaintiff Walter Smith has two lawsuits pending in this court, and the defendants have moved to dismiss both cases as a sanction for plaintiff's alleged litigation misconduct. As explained below, I have decided to hold an evidentiary hearing on defendants' motions.

In Case No. 14-cv-796-slc, Smith is pursuing claims related to the adequacy of Ramadan meal bags at Waupun Correctional Institution (Waupun) in 2008, 2009, 2010, and 2011; the availability of proper foods for the 2009 Eid-ul-Fitr feast; and the adequacy of the halal diet. Smith is represented by counsel in that case. In Case No. 18-cv-189-slc, Smith is proceeding against defendants on Eighth Amendment claims that Waupun's drinking was contaminated between 2009 and 2012. With respect to his claims in the '796 case related to Ramadan meal bags and the adequacy of the halal diet in particular, Smith claims that the food he was receiving between 2008 and 2011 sickened him. Smith similarly claims in the '189 case that the water was making him sick during this period of time.

This background is relevant because in the '496 case, defendants sought discovery of a food log that Smith claims to have started keeping in January 2008. After Smith delayed producing the log multiple times between May and August of 2019, defendants filed a motion for sanctions, seeking dismissal of that lawsuit with prejudice and issuance of a strike pursuant to 28 U.S.C. § 1915(g), on the ground that Smith fabricated the food log and then lied about the reasons for his delays in producing it. (Dkt. 143.) I denied that motion without prejudice

because (1) I was not persuaded that the evidence defendants submitted was strong enough to warrant a hearing on whether Smith fabricated the food log, in part because Smith had not submitted the food log as evidence in that case, and (2) defendants filed the motion without attempting to first resolve the dispute about the food log with Smith's counsel.

Defendants have renewed their motion now that (1) Smith filed the food log in opposition to defendants' motion for summary judgment in the '189 case (*see* '189 case, Smith Decl., Ex. 1 (dkt. 41-1)), (2) defendants took additional discovery related to Smith's delays in producing the food log, and (3) defendants conferred with Smith's counsel. ('189 case, dkt. 67; '796 case, dkt. 163.) For the reasons outlined below, I will set this matter for an evidentiary hearing.

OPINION

"A district court has inherent power to sanction a party who 'had willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). "Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Id.* However, district courts are required to "consider other sanctions before resorting to dismissal." *Rivera v. Drake*, 767 F.3d 685, 786 (7th Cir. 2014); *see also Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) ("[S]anctions, including dismissal, must be proportionate to the circumstances. Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case."). Defendants have the burden to prove that the basis for seeking sanctions to a

preponderance of the evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016).

In defendants' renewed motion, they provide further evidence to support their assertion that Smith lied during discovery related to why he delayed producing the food log, and, for the most part, stand on the evidence already submitted related to the authenticity of the food log itself. In opposition, Smith continues to deny any fabrication or misrepresentation, maintains that even if the court is persuaded that he fabricated the food log or lied during the course of discovery, dismissal of either of his lawsuits is a disproportionate sanction for his misconduct. Smith has requested an in-person hearing on defendants' motion. Because I have decided to hold a hearing on defendants' motion, I will outline defendants' new evidence and highlight the issues I will focus on during the evidentiary hearing.

I. **Smith's Representations about the Delay in Producing the Food Log During Discovery**

During his May 9, 2019, deposition, Smith testified that he kept a food log starting in 2008, but that his cousin, Rashida Rogers (formerly Rashida Williams), possessed it and was in the process of sending it to him. (Smith Dep. ('796 case, dkt. 91) 109-10.) On May 20, 2019, defendants served a discovery request on Smith requesting all of his food logs. Smith did not produce the logs until August 15, 2019, and defendants subsequently asked Smith in an interrogatory to explain the steps he'd been taking to obtain his food log. He responded:

> After my [May 9] deposition, I contacted my cousin to have her send the 2008-2011 food portion of the food log to me. However, when the mail room received the food log sent by my cousin, the mail room returned it to my cousin when I was in segregation, which was on June 11, 2019. I did not become aware that the

3

> mail room returned the package to my cousin until she informed me the package had been returned over the phone.

(Paulson Decl., Ex. 129 ('189 case, dkt. 71-1; '796 case, dkt. 167-1) 6.)

Defendants believe that Smith lied about (1) contacting Rogers, (2) the mail room confiscating the food log, and (3) who possessed the food log. I will provide an overview of each claimed fabrication in turn:

*First,* defendants contend that Smith could not have talked to Rogers over the phone for two reasons: (1) the record of Smith's phone records between April 1, 2019, and September 13, 2019, does not show a call to Rogers (*see* Kolecheck Decl., Ex. 131 ('189 case, dkt. 69-1; '796 case, dkt. 165-1); and (2) in another discovery response, Smith represented that he did not know Rogers' phone number because she had moved recently (*see* Paulson Decl., Ex. 130 ('189 case, dkt. 71-2; '796 case, dkt. 167-2) 5).

Smith has since clarified how he was able to communicate with Rogers, stating in a supplemental discovery response that "I was able to speak with [my cousin] indirectly over the phone at this time through my fellow inmate, who would call his girlfriend outside the prison, who would then conference in my cousin." (Paulson Decl., Ex. 132 ('189 case, dkt. 71-3; '796 case, dkt. 167-3) 8.) Smith doesn't recall the name of the fellow inmate who facilitated that conversation, and he hasn't explained why he needed another inmate to make that conversation happen. However, Smith says that he believes that he couldn't call Rogers on her phone because either she did not have an account with Stanley's phone system, or she did not have money in her account. (Smith Decl. ('796 case, dkt. 175) ¶ 6.) Smith maintains that later in the summer of 2019, after Stanley changed its phone system, he was able to place phone calls, and tried to

call Rogers multiple times, but by then her phone number had changed because she moved. (*Id.* ¶ 7.)

In reply, defendants submit evidence that would show that Rogers did, indeed, have an account during the summer of 2019, and that she received phone calls from other inmates in June and July, 2019, on her cell phone, which Smith had. (*See* Kolecheck Supp. Decl., Ex. 138 ('189 case, dkt. 87, ¶ 2; '796 case, dkt. 180, ¶ 2); Paulson Suppl. Decl., Ex. 139 ('189 case, dkt. 88; '796 case, dkt. 181) 19.) Therefore, as defendants see it, Smith could have contacted Rogers, so it wouldn't make sense for Rogers to talk to him through a third person. Both of these issues may be explored at the evidentiary hearing.

*Second,* defendants contend that Smith lied when he claimed that the mail room rejected Smith's food log package from Rogers. Defendant have submitted the declaration of Charles Vlasak, who explains that inmates receive mail regardless of their security status, with the only exception being inmates who are on a paper restriction. (Vlasak Decl. ('189 case, dkt. 68; '796 case, dkt. 164) ¶ 10.) Vlasak explains that the only reason why a package containing Smith's food log would have been withheld would be if the package had contained contraband, but the records of Smith's mail show no instances of non-delivery between 2016 and 2019. (*Id.* ¶¶ 7, 15.) In opposition, Smith says that defendants' evidence doesn't establish that he lied, and that it was possible that the package from Rogers could have been returned to her because she hadn't addressed the package properly. The parties may adduce testimony about this dispute at the evidentiary hearing.

*Third,* defendants contend that Natalie Johnson, a friend of Smith's, was helping Smith prepare his food log, and that Rogers never actually possessed it. Defendants say that Smith called Johnson on May 22, 2019, and during that conversation, Smith told her that he was going

5

to mail her something to copy and then discussed with Johnson his recent deposition in the '796 lawsuit. (Paulson Decl., Ex. 135 ('189 case, dkt. 71-4; '796 case, dkt. 167-4)). Defendants deposed Johnson, and she acknowledged that the conversation took place. (Johnson Dep. ('189 case, dkt. 72; '796 case, dkt. 168) 26-29.) Johnson further testified that shortly after the phone call, Smith sent her a blank calendar template and a pages of a calendar that had been filled out, asking her to make three copies of the blank calendar and one copy of the one with the information on it. (*Id.* at 30.) During her deposition, Johnson also compared the blank template Smith sent her to the 2008-2019 food log Smith produced, and she testified that the filled out calendar pages Smith sent her and asked her to copy may have been the food log Smith produced. (*Id.* at 53.) Defendants suggest that this testimony supports their theory that Johnson, not Rogers, had the food log, meaning that Smith lied in his interrogatory response.

On June 8, 2019, Smith and Johnson talked on the phone again. At this point, Johnson had copied the calendar but apparently the copy she had made put the months in the wrong order. Johnson asked Smith whether he could send it back to her to fix it. Smith responded:

> I just talked to my attorney. I got another call on Monday. . . . I'm going to talk with him again. Yeah, because they know I need time to put it because I got to copy it by hand, right? . . . They know I need time to do that. . . .

(*Id.* at 38; Ex. 136 ('189 case, dkt. 71-5; '796 case, dkt. 167-5) at 0:58-4:46.) Again, defendants say that Smith was referencing this lawsuit.

Smith and Johnson talked a third time on June 21, 2019, and Johnson told him she had sent his copies to him the prior Tuesday. (Johnson Dep. ('189 case, dkt. 72; '796 case, dkt. 168) 48-49; Paulson Decl., Ex. 137 ('189 case, dkt. 71-6; '796 case, dkt. 167-6) at 5:45-7:41.) Defendants point out that it is unclear why Smith needed a blank template in June of 2019, or why he needed to send Johnson his log to copy, but they say that it doesn't matter *why* Smith

involved Johnson. Rather, what matters is that they believe that this back and forth with Johnson shows that Smith lied about what he was doing with his food log before he produced it.

Smith responds that the conversations with Johnson don't establish that he lied in his interrogatory response. Smith's position is that he was talking to Johnson about a different lawsuit altogether, one in which he was preparing a log about harassment he had experienced at his Stanley. Smith dissects Johnson's testimony at her deposition, deeming material the fact that Johnson could not recall that Smith was pursuing any claims related to Ramadan meals. But Smith does not address the fact that during the phone call Smith referenced (1) his attorneys, and (2) how the attorney who deposed him was sympathetic to his complaint that he was receiving cold meal bags. (*See* Ex. 136 ('189 case, dkt. 71-5; '796 case, dkt. 167-5) at 0:58-4:46.) Given that Smith had not even filed his complaint in his harassment case in June of 2019, and given that Smith's '796 case involves claims that the Ramadan meals were making him sick, Smith's explanation for his communication with Johnson don't make sense. The parties are free to explore these issues at the evidentiary hearing.

II. **Mistakes in the Food Log as Evidence of Fabrication**

Defendants maintain that Smith fabricated the food log for purposes of these two lawsuits. In support, they repeat their position that Smith's log entries from Ramadan in 2010 were off by nine days, even though Smith's log entries about inmate complaints and medical visits were correct. In my prior opinion, I agreed that defendants raised a fair concern that the date discrepancy could be a sign that the food log was created after 2010, and I see no need to repeat that analysis here.

Defendants now add that they located two other years in which Smith got the Ramadan dates wrong in his food log. In 2017, Smith's end-date for Ramadan was off by three days, and in 2018, Smith's entry for the final day of Ramadan was off by one day. Smith disputes these inaccuracies, explaining that in 2017, he correctly noted the last day he received a Ramadan meal bag, and that in 2018, he and fellow inmates fasted an extra day because they disagreed with Waupun officials as to the correct final day of Ramadan that year. (Smith Decl. ('796 case, dkt. 175) ¶¶ 4-5.) Defendants do not mention these alleged inaccuracies in their reply brief, so I infer that they are dropping the 2017 and 2018 Ramadan entries as evidence that supports their motion.

I also raised concerns about the content of Smith's log: I questioned why many of Smith's food log entries related to his inmate complaints and the adequacy of religious ceremonies, when the purpose of the food log was to track his IBS symptoms. In his opposition in the '796 case, Smith's counsel directs me to Smith's statement that he included those statements at the advice of another prisoner. (*Id.* ¶ 1.) Smith, too, would like the opportunity to further explain himself. He will get his chance at the evidentiary hearing.

### III. Smith's Filings Related to Extensions

Finally, defendants claim that Smith's January 27, 2020, motion seeking an extension of time to file a sur-reply in opposition to defendants' motion for summary judgment in the '189 case (*see* '189 case, dkt. 63) contained misrepresentations. Defendants cite evidence that would tend to show that Smith was lying when he represented that he needed an extension because he (1) did not receive the court's order allowing him to file a sur-reply on time, and (2) didn't have

access to the law library before his new deadline. Specifically, defendants submit the legal mail tracking receipt that they claim shows that Smith received the court's order on January 9, 2020, not January 11 as he claimed in his motion (*see* Webster Decl., Ex. 1008 ('189 case, dkt. 66-1), and the record of Smith's law library time between January 9 and January 17, which would show that he attended law library time six times between January 9 and 17 of 2020 (*see* '189 case, dkts. 66-2, 66-3).

Defendants acknowledge that these alleged misrepresentations are not directly related to their motion and that these types of misrepresentation would not, in isolation, merit dismissal of a lawsuit, but they contend that they are examples of Smith's unconstrained dishonesty in his submissions to this court. Smith is not represented by counsel in the '189 case, but Smith responded to this argument in that case. Not surprisingly, Smith takes issue with defendants' characterization of his behavior, charging defense counsel with unprofessionalism and deception, and piecing apart defendants' evidence related to when he received his mail, and his ability to access the law library. (*See* '189 case, dkt. 92, at 2-7; '796 case, dkt. 183.)

I conclude that there are genuine disputes as to whether Smith actually lied in his January 27, 2020, motion for extension related to these two issues. Although this particular dispute is tangential to what most concerns the court, defendants' concern about Smith's overarching pattern of dishonesty is a fair issue to raise. If the court were to conclude that Smith has lied about a material issue in this lawsuit, then the sanction imposed would be commensurate with the depth and breadth of Smith's misconduct, which would include small lies along with big ones.

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss ('796 Case, dkt. 163; '189 Case, dkt. 67) is stayed pending an evidentiary hearing related to the authenticity of Smith's food log.

2) The parties shall meet and confer to discuss the logistics of the hearing and report back to the court not later than July 10, 2020 as to: when they will be ready for a hearing; whether they would prefer a Zoom hearing, or an in-person hearing in the courthouse; who the witnesses will be; a time estimate on the length of the hearing; and whether they would like the opportunity to submit post-hearing briefs.

Entered this 18th day of June, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge